# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| John Russell, | : | Case No.  1:07CV3434 |
| | : | |
| Petitioner | : | Judge Dan Aaron Polster |
| | : | |
| v. | : | Magistrate Judge David S. Perelman |
| | : | |
| Carl Anderson, Warden, | : | |
| | : | **REPORT AND RECOMMENDED** |
| | : | **DECISION** |
| | : | |
| Respondent | : | |

In this action in habeas corpus, 28 U.S.C. §2254, petitioner challenges the constitutionality of his conviction pursuant to a bench trial of eight counts of gross sexual imposition, some of which were merged for purposes of sentencing, upon which he is serving an aggregate sentence of five years incarceration, with five years of post-release control.

On September 20, 2006 the petitioner appealed his convictions to the Ohio Eighth District Court of Appeals, alleging the following six assignments of error:

I.      The convictions violate the Sixth and Fourteenth Amendments of the federal Constitution, *Valentine v.  Konteh*, 395 F.3d 626, (6th Cir.  2005), *In re: Oliver*, 333 U.S. 257 (1948) and the charging method employed by the state denied appellant fair notice of the charges against him and denied him adequate opportunity to prepare his defense.

II.     The evidence is insufficient to convict the appellant of five separate acts of gross sexual imposition in violation of the federal

1

Constitution.

III.    O.R.C. 2929.12(D) violates the Fifth, Sixth and Fourteenth amendments of the federal Constitution and a new sentencing hearing is in order.

IV.    The trial court erred to the prejudice of the appellant in denying a more specific bill of particulars in violation of Due Process under the Fourteenth Amendment of the federal Constitution.

V.    The trial court erred to the prejudice of the appellant in denying the request for Grand Jury transcripts in violation of State v. Greer, 66 Ohio St.2d 139 (1981) and the Due Process clause of the federal Constitution.

VI.    The cumulative errors denied the appellant a fair trial and sentencing hearing in violation of the Fourteenth Amendment of the federal Constitution.

The facts in petitioner's criminal case were summarized by the state appellate court in pertinent part as follows:

Appellant was charged in a 57 count indictment filed November 10, 2004 with 23 counts of rape, 27 counts of gross sexual imposition, and 7 counts of kidnapping.  All of the charges carried sexually violent predator specifications; the kidnapping charges also carried sexual motivation specifications.  Each of the first 47 charges was alleged to have occurred within various one year periods.  Counts 1-4 allegedly occurred between November 1997 and November 1998; counts 5-7, between November 1998 and November 1999; counts 8-13, between November 1999 and November 2000; counts 14-18, between November 2000 and November 2001; Counts 19-29, between November 2001 and November 2002; and counts 30-47, between November 2002 and November 2003.  Counts 48-57 allegedly occurred between November 2003 and August 2004.

Appellant requested and received a bill of particulars, which was filed on December 13, 2004.  More than a year later, on January 24, 2006, appellant moved the court for a more specific bill of particulars.  The court heard oral argument regarding this issue immediately before trial and orally denied the motion.  Appellant also filed a motion for production of the transcripts of the grand jury proceedings which the court orally denied before trial.

2

Appellant waived his right to a jury trial and proceeded to trial before the court.  At trial, the state presented extensive testimony from the victim, appellant's daughter; the victim's therapist, Maureen Riley-Behringer; nurse-practitioner McAliley, who examined the victim; the victim's mother, Brenda Lamparyk, detective Larry R. Kirkwood, and social worker Jamessa Motley.

The victim, appellant's daughter, was born November 2, 1991.  She testified that her parents were divorced when she was two or three years old.  Both parents had since remarried.  She had regular visitation with appellant, twice per week, from the time she was in kindergarten.  During visitation, she and her father usually went to appellant's parents' home in Lakewood, although appellant did not live there.

The victim recalled that appellant took her upstairs to her "Aunt Becky's room" to play a game called "Doctor."  She said he made her touch him and he touched her.  The first time he did this, she was "pretty small" and "had kind of hair like shoulder length."  He told her to stand up, then pulled down her pants and touched her "private part" with his hand through her under wear.  She said she was "scared, confused" by this.  He then took her hand and put it down his pants and showed her how to rub his "private part."  He took her hand away, pulled up his pants, and left the room.  The victim said this occurred "four or five times" when she was in kindergarten.

These incidents occurred another six or seven times when she was in the first grade, or seven years old.  She testified that one of them would remove her underwear and he would rub her with his hand.  He also had her rub his penis.  The victim said appellant was sometimes nice, and sometimes mean, telling her that he would hurt or kill the victim's mother if the victim ever told anyone what they were doing.

When the victim was seven or eight years old, appellant began to make her have sexual intercourse with him.  She recalled one such incident, but it was not the first time.  She did not remember any of the details of that day except that this incident occurred in the afternoon.  She said they touched each other then appellant pushed her onto the bed and "stuck his penis into my private part, and I just remember it hurt really bad."  She said "ow" and "stop," but appellant told her to shut up, and said he would hurt her mother if she told anyone.

3

When the victim was in the second or third grade, appellant took her to the "Around the Corner" bar, where he worked. She recalled that she went down into the basement, where the office was, and that she had a migraine headache and passed out. When she awoke, she "was just really sore down there."

The incidents of sexual touching and sexual intercourse occurred with increasing frequency each year as she got older. The victim recalled one incident which occurred in a blue room in the attic at her grandparents' house when she was seven or eight years old and her grandparents' friends, the Blisses, were visiting. In addition to rubbing one another's private part, appellant began to have sexual intercourse with her but stopped when they were called by the others downstairs. She also recalled another incident of touching on Christmas day when she was eight or nine years old. She said he took her upstairs to her Aunt Becky's room and rubbed her private part through her underwear and stuck his finger in her vagina.

The victim said the incidents of touching and/or intercourse occurred two or three times a month during visitation. On one occasion, he tried to force his penis into her mouth, but she bit him. He yelled at her and punched the bed, but never tried to do it again. She also recalled another incident which occurred in the greenhouse at her grandparent's house when she was 9 or 10 years old. Appellant touched her private part and made her touch him. He began to have intercourse with her, but someone pulled into the driveway and they stopped. He also touched her and forced her to have intercourse with him after she returned from camp during the summer before she entered the seventh grade. She recalled a further incident when she was nine or ten when appellant took her to the recreation room above his parents' garage. Appellant had her sit on a table and "[h]e rubbed me and then he stuck his thing up inside of me and moved it around."

The victim eventually told a friend that her father sometimes touched her. Shortly thereafter, the victim's mother asked her if someone had touched her. She said yes, "two random people" whom she did not identify. She said she did so because she was afraid appellant would hurt her half-brother. She later told her mother that it was her grandfather, then later told her it was her father.

At the very close of the state's case, the state dismissed the first count, a rape charge, and dismissed all of the sexually violent

4

predator specifications.  Pursuant to appellant's Rule 29 motion for acquittal, the court dismissed 16 of the rape charges (counts 9, 15, 20, 21, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 48, and 49), 13 of the gross sexual imposition charges (counts 12, 24, 36, 37, 38, 40, 41, 42, 43, 44, 45, and 46), and 3 of the kidnapping charges (counts 4, 25, and 47).  The court later clarified that of the remaining counts, counts 2 and 3 related to incidents occurring when the victim was in kindergarten; counts 5, 6, and 7 related to the time when the victim was in the first grade; counts 8, 10, 11, and 13 related to when the victim was in the second grade; counts 14, 16, 17 and 18 related to when the victim was in third grade, which the court associated with the Christmas incident; counts 19, 22, and 23 related to the period when the victim was in the fourth grade; count 39 related to an incident when the victim was in the fifth grade; counts 51, 52, 53 and 57 related to the greenhouse incident; and counts 50, 54 and 55 related to the incident after she returned from camp.

At the conclusion of all of the evidence, the court found appellant guilty of gross sexual imposition as charged in counts 2, 3, 6, 22, 23, 39, 54 and 55.  For sentencing purposes, the court merged counts 2 and 3, 22 and 23, and 54 and 55, and sentenced him to one year imprisonment on each of the merged charges and one year on each of counts 6 and 39, to be served consecutively, for a total of five years' imprisonment, followed by five years' post-release control.

During the pendency of the appeal, on October 10, 2006 petitioner filed with the appellate court a motion to seal the prosecution's file in order that "it may be reviewed to determine if the representations made by the State, i.e. that it did not possess any more detailed information, is true."  The appellate court granted the motion without opinion, but made no mention of transmittal of the file to the court.[1]

On May 3, 2007 the state appellate court affirmed the judgment of conviction and sentence.

Petitioner appealed the state appellate court ruling to the Ohio Supreme Court alleging the

---

[1]That motion, as well as a similar request by petitioner in these proceedings, are addressed in a separate memorandum opinion and order issued at the same time as this recommended decision.

following five propositions of law:

>**Proposition of Law No. I:** O.R.C. 2929.12(D) violates the Fifth, Sixth and Fourteenth Amendments of the federal Constitution and *State v. Foster*, 2006 Ohio 856; a new sentencing hearing is in order.

>**Proposition of Law No. II:** The charging method employed by the State denied appellant fair notice of the charges and denied him an adequate opportunity to prepare his defense in violation of the Sixth and Fourteenth Amendments of the federal Constitution and the convictions violate *Valentine v. Konteh*, 395 F.3d 626, (6th Cir. 2005) and *In re Oliver*, 333 U.S. 257 (1948).

>**Proposition of Law No. III:** Under the Fourteenth Amendment's Due Process Clause, a trial court must grant a more specific bill of particulars when the indictment is vague and must at a minimum conduct an in camera inspection of the State's file to determine whether the information requested is available and material to a defendant's ability to prepare and present a defense.

>**Proposition of Law No. IV:** Where a complaining witness identifies at least two other people as the perpetrator of the crimes against her before identifying the appellant, a request for grand jury transcripts must be granted in accordance with State v. Greer, 66 Ohio St.2d 139 (1981) and the Due Process clause of the federal Constitution.

>**Proposition of Law No. V:** The evidence is insufficient to convict Mr. Russell of five separate counts of gross sexual imposition in violation of the federal Constitution.

On September 26, 2007 the state supreme court denied petitioner leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Petitioner did not appeal this decision to the United States Supreme Court.

On November 5, 2007 the petitioner filed the instant petition, in which he raises the following five claims for relief:

>**A.  GROUND ONE:** O.R.C. 2929.12(D) violates the Fifth, Sixth and Fourteenth Amendments of the federal Constitution and a

6

new sentencing hearing is in order.

**Supporting FACTS:** Petitioner maintained his innocence at the sentencing hearing. The judge used Petitioner's claim of innocence or no remorse as a factor in sentencing him to consecutive terms of incarceration. The Fifth Amendment extends through the sentencing hearing. The State cannot require a showing of genuine remorse or risk having a key sentencing factor used against a criminal defendant. The statute also violates the Sixth Amendment for punishing one for going to trial. The Fourteenth amendment is violated because the statute is vague, does not set forth a standard by which Defendant must prove "genuine remorse," relieves the State of its burden and is unconstitutionally vague.

**B.    GROUND TWO:** The charging method employed by the State denied Petitioner fair notice of the charges and denied him an adequate opportunity to prepare his defense in violation of the Sixth and Fourteenth Amendments of the federal Constitution and the convictions violate *Valentine v. Konteh*, 395 F.3d 626, (6th Cir. 2005) and *In re Oliver*, 333 U.S. 257 (1948).

**Supporting FACTS:** Petitioner's indictment, with only a 1 year period of specificity as to the various counts, violated the Sixth and Fourteenth Amendments and the time frames were arbitrary. The Petitioner was not able to properly prepare his defense and did not receive fair notice of the charges. No meaningful distinction can be made among the counts.

**C.    GROUND THREE:** Under the Fourteenth Amendment's Due Process Clause, a trial court must grant a more specific bill of particulars when the indictment is vague and must at a minimum conduct an in camera inspection of the State's file to determine whether the information requested is available and material to a defendant's ability to prepare and present a defense.

**Supporting FACTS:** The indictment covered 57 counts of criminal conduct from November 1997-August 2004. Petitioner requested a more specific bill of particulars and could not prepare a defense, including alibi, given the vague indictment. The indictment and bill of particulars violated due process under the Fourteenth Amendment. The sealed prosecution file should have at least been reviewed by the Court

and by counsel to see if material existed to allow Petitioner to prepare his defense.

   **D.   GROUND FOUR:** Where a complaining witness identifies at least two other people as the perpetrators of the crimes against her before identifying the petitioner a grand jury transcript must be granted in accordance with the Due Process Clause of the Fourteenth Amendment of the federal Constitution.

   **Supporting FACTS:** Due process of the Fourteenth Amendment requires the Grand Jury transcripts to see if the Grand Jury knew of the various inconsistent statements made by the complaining witness as to the identity of the perpetrator before it returned the indictment.

   **E.   GROUND FIVE:** The evidence is insufficient under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979) to convict petitioner of five separate counts of gross sexual imposition.

   **Supporting FACTS:** No rational trier of fact could have found Petitioner guilty of gross sexual imposition and not guilty of rape and kidnapping.  The verdict makes no sense and the convictions are not separated by sufficient evidence.

   The provisions of the Antiterrorism and Effective Death Penalty Act, "AEDPA," Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 26, 1996) are controlling herein as the instant petition was filed after the Act's effective date.  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).[2]

   The role of a federal district court in habeas corpus is set forth in Title 28 U.S.C. § 2254 (d) which provides:

   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

   (1) resulted in a decision that was contrary to, or

---

[2]There are no issues of untimeliness in this case.

8

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has held that the clauses "contrary to" and "unreasonable application of" as found in §2254(d)(1) have independent meanings. Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). A state court adjudication is deemed as being "contrary to" Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A state court adjudication is deemed as involving an "unreasonable application of clearly established Federal law, as determined by the Supreme Court...as of the time of the relevant state-court decision;" "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "if the state court either unreasonably extends a legal principal from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principal to a new context where it should apply." 120 S.Ct. at 1519-1520. In deciphering the "unreasonable application" clause this Court must inquire as to whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Circuit Court of Appeals has interpreted the foregoing as holding that even if a federal habeas corpus court determines that a state court incorrectly applied federal law it may not grant relief in habeas corpus unless it finds that the state court ruling was also unreasonable.

Simpson v. Jones, 238 F.3d 399, 405 (6th Cir. 2000), citing Machacek v. Hofbauer, 213 F.3d 947, 953 (6th Cir. 2000), cert. denied, 121 S.Ct. 808 (2001).

In his first claim for relief petitioner alleges that Ohio Revised Code §2929.12(D)(5) is unconstitutional as a consequence of its requiring the sentencing court to consider his lack of remorse in sentencing him, which he argues in turn effectively punishes him for exercising his right to trial.

To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. Clemmons v. Sowders, 34 F.3d 352, 357 (6th Cir. 1994). A violation of state law is not cognizable in federal habeas corpus unless such error amounts to a fundamental miscarriage of justice or a violation of the right to due process in violation of the United States Constitution. See, Floyd v. Alexander, 148 F.3d 615, 619 (6th Cir.), cert. denied, 525 U.S. 1025 (1998); Serra v. Michigan Dep't of Corrections, 4 F.3d 1348, 1354 (6th Cir. 1993), cert. denied, 510 U.S. 1201 (1994). It is the obligation of this Court to accept as valid a state court's interpretation of the statutes and rules of practice of that state, including state sentencing laws. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).[3] Accord, Howard v. White, supra at 53.

The state appellate court rejected petitioner's challenges to his sentencing on direct appeal holding in pertinent part:

> Appellant next contends R.C. 2929.12(D)(5) requires the court to consider appellant's lack of remorse in sentencing him, and this requirement violates the defendant's right against self-incrimination and effectively punishes him for exercising his right to trial. Whether the offender shows genuine remorse is one of several

---

[3]Petitioner's claim for relief invokes only his due process rights and not the Eighth Amendment prohibition against cruel and unusual punishment.

10

factors the court may consider in assessing whether the offender is likely to commit a future crime.  R.C. 2929.12(D)(5) and (E)(5). There is no indication in the record that the court considered the fact that appellant exercised his right to trial to demonstrate lack of remorse, or that the court considered that his failure to testify at trial demonstrated a lack of remorse.  Rather, the appellant told the court at sentencing that "I must maintain my innocence.  I have never inappropriately touched [my daughter] in any way ***."  In sentencing appellant, the court stated, "you sit there indicating to me that you're innocent and I will use that as a factor of showing no remorse or showing no *** acceptance of responsibility." Therefore, we overrule the third assignment of error.

During the sentencing hearing, the trial judge articulated the factors he relied on in sentencing petitioner, indicating that petitioner's lack of remorse was only one of the factors he considered:

What it comes down to, Mr. Russell, is three individuals, it comes down to you, it comes down to your daughter and it comes down to me and that's what I look at in this sentencing phase, so I'm not concerned about this, I'm concerned about you and me and your daughter.

I would say to you, sir, I don't believe that a child, a family member or any person could make up a story as compelling as the evidence that was presented to me during this trial with respect to these charges.  No child, no family member or person, I think, would impose the physical or psychological damage that your daughter has displayed over the course of these six years to make up false accusations.

As you indicate in your presentence report to the Court Psychiatric Clinic these charges came out of the blue.  I can't see these charges coming out of the blue over the course of six years that somebody was plotting a plan against you because of visitation changes, I can't see that in the eyes of this Court at all.

When I look at my findings for the record I find that your daughter was sexually abused in the form of gross sexual imposition during the ages of six and 12, that you engaged in sexual contact with your daughter, that, Mr. Russell, that she trusted you and you abused that trust repeatedly, that you robbed your daughter of her

childhood, that you robbed her of her sexuality and all that's good with sexuality, because it's suppose to be something good, and you robbed her of that, her human nature of sexuality.

Now Mr. Stanton sits here and you sit here and I know where the lines are drawn with remorse and whether remorse itself is shown to me and that's one factor that this Court will look at.  And obviously you sit there indicating to me that you're innocent and I will use that as a factor of showing no remorse or showing no responsibility or acceptance of responsibility.

* * * * *

I think you've caused your daughter immense psychological and physical harm such that she attempted to kill herself.

She's made multiple forms and she has multiple forms of eating disorders, she's been depressed, migraine headaches, self mutilation, she has abnormal sleeping behavior, she's exhibited outward signs of self abuse, she's had counseling with many professionals before this event and after this event.  She has been scorned in the eyes of many, many that she has loved and many that she still loves.  Mr. Russell, I think of her going to have a lifetime of pain, a lifetime of counseling as a result of this for the rest of her life.

Your lawyer mentioned on the record that this has irreversibly changed your life.  It's you and your daughter that's irreversibly changing her life.  You robbed her of her life, you didn't just rob your wife of her life, you robbed her of her life.

When I look at the sentencing factors and the factors this Court has found I am going to find, sir, that although the seriousness factors that have been outlined here, that, in fact, you did threaten the daughter in these acts, someone who loved you.  And you threatened her and, again, I don't believe she will ever be a normal teenager, a normal functioning person in society.

When I look at the seriousness factors with respect to this case and the presentence investigation report more serious factor that weighs against you, sir, is an injury to a victim was worsened by the physical or mental condition and the age of the victim.  Lindsay suffered repeated sexual abuse during the formation ages, I believe, ages six through 12.

12

> She suffered psychological harm as a result of they say [sic] acts. She had to undergo counseling and continues to suffer today. Adverse to the effects you have placed upon her in these assaults, sir.  I believe you've held a position of trust as well as a father in her eyes and you've abused that position of trust.
>
> And, finally, because of your relationship with her being the father of her that you are, in fact, victimizing her and because of your relationship that helped facilitate this offense.  I find four of these factors to weigh more seriously against you, Mr.  Russell, at the time of this sentencing.  I find none of the less serious factors here on the record.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus.  There is no indication that the statute in question has been overruled as unconstitutional by state courts.  However, even if these violations of state law were to be considered, this Court would not find that the decision of the state appellate court on the foregoing matters of state law was either objectively unreasonable or that it involved an unreasonable application of federal law.  That is particularly true in light of the fact that the sentencing transcript demonstrated that petitioner's lack of remorse was "a factor" to be considered in sentencing him, along with other serious factors, which was in accordance with the state statute.  That being so, petitioner's first claim for relief must fail.

Petitioner's second and third claims for relief will be considered together, in light of the fact that they both challenge the indictment against him as lacking specificity.  These claims for relief must fail for each of several reasons.

As was stated previously in analyzing petitioner's first claim for relief, in order to be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution.  <u>Clemmons v. Sowders</u>, <u>supra</u> at 357.  State law violations are only cognizable in federal habeas corpus if they amount to fundamental

miscarriages of justice or violations of the right to due process as found in the United States Constitution.  See, Floyd v.  Alexander, supra at 619;  Serra v.  Michigan Dep't of Corrections, supra at 1354.  This Court must accept as valid a state court's interpretation of the statutes and rules of practice of that state.  Estelle v. McGuire, supra at 67-68

In addition, it is well-established that there is no federal constitutional right to be charged in an indictment.  Hurtado v. California, 110 U.S. 516, 537-38 (1884); Branzburg v. Hayes, 408 U.S. 665 (1972); Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984); Watson v. Jago, 558 F.2d 330, 337 (6th Cir. 1977).  "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense."  Koontz, supra at 369, citing In Re Ruffalo, 390 U.S.544 (1968); Blake v. Morford, 563 F.2d 248 (6th Cir. 1977); and Watson v. Jago, supra at 338.  Such fair notice is given when the offense charged is described with "precision and certainty so as to apprise the accused of the crime with which he stands charged." Ibid.

That having been said, claims of error in an indictment are state law claims not cognizable in habeas corpus, unless it can be shown that the defendant was denied fair notice of the charges against him or her so as to adequately prepare a defense.

The state appellate court held that the indictment did not violate petitioner's constitutional rights, stating in pertinent part:

> In his first assignment of error, appellant urges that the indictment did not sufficiently inform him of the charges against him so as to allow him to prepare a defense.  The fourth assignment raises a related issue, asserting that the court erred by denying appellant a more specific bill of particulars.  Because these assignments of error both address the specificity of the charges, we address them

together.

In general, an indictment is constitutionally adequate if it first "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States* (1974), 418 U.S. 87, 117, 41 L.Ed.2d 590, 94 S.Ct. 2887. "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling*, 418 U.S. at 117 (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed.2d 1135 (1882).

"Individual offenses must be established with some degree of distinction." *State v. Hemphill,* Cuyahoga App. No. 85431, 2005 Ohio 3726, P56. This detail need not be established in the indictment itself, nor need it be established by reference to a specific date and time. A bill of particulars or even discovery may provide the necessary detail to connect each charge to a specific incident and provide the defendant with adequate notice of the crimes charged. *Valentine v. Konteh* (6th Cir. 2005), 395 F.3d 626.

Appellant's counsel himself conceded during the oral argument before the trial court that the state had "done the best that they could." Because the victim was a child, the available details of each offense were limited. The state had supplied appellant with such information as it had through discovery. The time ranges included in the indictment for each offense allowed the court to associate particular charges with particular incidents to which the victim testified at trial. Therefore, the indictment was not insufficient nor did the trial court err by denying appellant's motion for a more specific bill of particulars. We overrule the first and fourth assignments of error.

These allegations of violation of state law fail to rise to the level of a denial of fundamental fairness and, therefore, are not cognizable in federal habeas corpus. That is particularly true since petitioner's counsel conceded that the state had "done the best that they could[,]" considering that it is difficult to obtain exact dates of the criminal acts when such a young victim is involved, but that

15

the time ranges provided were sufficient to tie the crimes alleged with particular incidents. However, even if these state law claims were to be considered, this Court would not find that the decision of the state appellate court on the foregoing matters of state law was either objectively unreasonable or that it involved an unreasonable application of federal law. Consequently, petitioner's second and third claims for relief are without merit.

In his fourth assignment of error petitioner alleges that his constitutional rights were violated by reason of the fact that he was not provided with a grand jury transcript so that he could determine whether the jurors had been informed that the victim had previously named others as having been the perpetrators of the crimes with which petitioner was charged and ultimately convicted.

In an opinion denying a petition for writ of habeas corpus in which one claim for relief alleged that the petitioner needed access to the grand jury transcript in order to adequately challenge the indictment, Judge Oliver summarized the applicable law as follows:

> Generally, an accused is not entitled to see grand jury transcripts unless required by the ends of justice and he shows that a particular need for disclosure exists that outweighs the need for secrecy. *United States v. Procter and Gamble, 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958)*; *Garrett v. Moore, 2007 U.S. Dist. LEXIS 6626, 2007 WL 315093, *10 (S.D. Ohio Jan. 30, 2007)*; *Blalock v. Wilson, 2006 U.S. Dist. LEXIS 65794, 2006 WL 1866666 (N.D. Ohio June 30, 2006)*; *United States v. Tennyson, 88 F.R.D. 119, 121 (E.D. Tenn. 1980)*. Grand jury material may be disclosed where it appears that failure to do so will deny the defendant a fair trial. *Blalock, 2006 U.S. Dist. LEXIS 65794, 2006 WL 1866666*; *State v. Sellards, 17 Ohio St. 3d 169, 173, 17 Ohio B. 410, 478 N.E.2d 781 (1985)*. The particularized need requirement is not satisfied by a generalized request to inspect grand jury testimony. *Tennyson, 88 F.R.D. at 121*.
>
> To the extent that Treesh was seeking to assert a due process claim for failure to provide a transcript that would allow him to fully prepare his defense, the court finds that his claim should be denied.

He also argues that he needed grand jury testimony to attack his indictment. (Pet. 22.) This argument lacks merit as well. As the Supreme Court stated in *United States v. Calandra, 414 U.S. 338, 344-345, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974)*, "[t]he grand jury's sources of information are widely drawn, and the validity of an indictment is not affected by the character of the evidence considered. Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence . . . ." The court therefore denies this claim.

Treesh v. Bagley, Case No. 1:02 CV 0462, 2007 U.S. Dist. LEXIS 28985, *54-*55  (N.D.Ohio March 31, 2007) (Judge Oliver).

In the present case the state appellate court considered, and rejected, petitioner's assignment of error premised upon his inability to obtain the grand jury transcript, holding in pertinent part:

Appellant's fifth assignment of error claims the court erred by failing to provide him with the transcripts of the grand jury proceedings.  Testimony before the grand jury is secret and may only be disclosed by order of the trial court upon a showing of a particularized need for it.  *State v. Greer* (1981), 66 Ohio St.2d 139, 420 N.E.2d 982.  In this case, appellant argues that disclosure of the transcripts of the grand jury proceedings is necessary to determine whether the grand jury was informed about the multiple statements made by the victim.  This argument begs the question: why does appellant need to know whether this information was supplied to the grand jury?  Appellant cannot challenge the sufficiency of the evidence presented to the grand jury.  Cf. *State v. Jeffries* (March 22, 2001), Cuyahoga App.No.  76880, 2001 Ohio App.  LEXIS 1367 at *7; *State v. McNamee* (1984), 17 Ohio App.3d 175, 176, 17 Ohio B.  306, 478 N.E.2d 843 (there is no pretrial procedure for challenging the sufficiency of the evidence).  Therefore, we overrule the fifth assignment of error.

This ruling, when considered in conjunction with the court's determination upholding the validity of the indictment, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court,

17

nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  That is particularly true in this case as petitioner argued, as did the petitioner in <u>Treesh</u>, that he needed the transcript in order to adequately challenge the validity of the indictment against him.  For the foregoing reasons, petitioner's fourth claim for relief is without merit.

In his fifth claim for relief petitioner challenges the sufficiency of the evidence relied upon by the trial court to convict him.

The standard for addressing an argument that a conviction is not supported by sufficient evidence was enunciated in <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979), as follows: "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Accord</u>, <u>McKenzie v. Smith</u>, 326 F.3d 721, 727 (6th Cir. 2003); <u>Matthews v. Abramajtys</u>, 319 F.3d 780, 788 (6th Cir. 2003).  In reaching its determination as to the sufficiency of the evidence this Court may not substitute its determination of guilt for that of the factfinder and may not weigh the credibility of the witnesses.  <u>Herrera v. Collins</u>, 506 U.S. 390, 401-402 (1993); <u>Jackson v. Virginia</u>, 443 U.S. at 319, n.13; <u>Brown v. Davis</u>, 752 F.2d 1142 (6th Cir. 1985).

That standard has been modified somewhat by §2254(d) in that questions of sufficiency of the evidence are mixed questions of law and fact upon which a writ may be granted only if the adjudication of the state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), or was based upon "an unreasonable determination of the facts in light of the evidence presented" at petitioner's trial, §2254(d)(2).  <u>Starr v. Mitchell</u>, unreported, Case No. 98-4541, 2000 U.S.App. LEXIS 25646,*9-*10 (6th Cir. October 6, 2000).

18

The state appellate court reviewed petitioner's claims that he was convicted without sufficient proof and held in pertinent part as follows:

> Appellant's second assignment of error asserts that the evidence was insufficient to support his convictions. Appellant was convicted of eight charges of gross sexual imposition, in violation of R.C. 2907.05. R.C. 2907.05 provides in pertinent part: "(A) No person shall have sexual contact with another, not the spouse of the offender *** when any of the following applies: *** (4) the other person *** is less than thirteen years of age, whether or not the offender knows the age of that person." "Sexual contact" is statutorily defined as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
>
> The victim in this case described one incident of touching when she was in kindergarten; she specifically recalled that he touched her genitals and guided her hand to touch his genitals. This evidence was sufficient to support appellant's conviction of counts 2 and 3. See *State v. Stewart* (1996), 111 Ohio App.3d 525, 534-35, 676 N.E.2d 912 (having child touch defendant's erogenous zone was sufficient to support gross sexual imposition conviction). The victim also testified that when she was seven or eight years old, appellant touched her and made her touch him, then pushed her onto the bed and "stuck his penis into my private part," amply supporting his conviction of count 6. Appellant's conviction of counts 22 and 23 are supported by the victim's testimony about the incident in which appellant touched her then put his penis in her mouth. The victim's testimony that appellant touched her and forced her to have sexual intercourse with him after she returned from summer camp supports appellant's conviction of count 39. Finally, the victim's testimony that appellant touched her and made her touch him in the greenhouse, inserted his finger in her vagina then began to have sexual intercourse with her was sufficient to support appellant's convictions of counts 52 and 53.fn1
>
> _____
> [fn 1] The victim testified about several other instances of touching, which the trial court also could have relied upon to support appellant's convictions, the court did not make factual findings, so we cannot say what evidence it actually relied upon.
> _____
>
> Appellant contends that "[t]he court's acquittal on the Rape and

19

Kidnapping charges is inconsistent with the guilty findings on the gross sexual imposition counts" because, if the court found the victim credible, then it should have found appellant vaginally raped her.  In evaluating the sufficiency of the evidence to support the charges of which appellant was convicted however, we will not speculate about the sufficiency of the evidence with respect to other charges of which appellant was not convicted.  We cannot properly infer that, because appellant was not convicted of the rape and kidnapping charges, he also should not have been convicted of gross sexual imposition.  The second assignment of error is overruled.

The state appellate court found the evidence sufficient to prove the elements of the crimes charged.  In so doing, the state appellate ruling, which relied overall on state authorities, but it also applied analysis set forth in <u>Jackson v. Virginia</u>, <u>supra</u>, neither resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, nor was the decision based upon an unreasonable determination of the facts in light of the evidence presented.  The victim testified about a number of incidents of sexual contact inflicted upon her by petitioner so as to satisfy the elements of the applicable statutes.  It follows that petitioner's fifth claim for relief is without merit.

In light of the foregoing, it is recommended that the petition be dismissed without further proceedings.

s/DAVID S. PERELMAN
United States Magistrate Judge

DATE:   August 8, 2008

20

**OBJECTIONS**

Any objections to this Report and Recommended Decision must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See, also, Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).